AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2017 OCT 19  PM 4: 54

U.S. DISTRICT COURT
SOUTHERN DIS...
...DIV. DAYTON

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) |
| LG G6 SMART PHONE, MODEL: LG-LS993, MEID: 089 451 725 600 402 720, CURRENTLY LOCATED AT FBI, 7747 CLYO ROAD, CENTERVILLE, OHIO | ) ) ) |

Case No. 3 : 17 mj 497

MICHAEL J. NEWMAN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

LG G6 Smart Phone, Model: LG-LS993, MEID: 089 451 725 600 402 720, currently located at FBI, 7747 Clyo Road, Centerville, Ohio

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

Stored electronic data contained on said LG G6 Smart Phone, to include, but not limited to, all text messages, e-mail, voice mail, and photo/digital images.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 USC 5861 (c) | receive/possess a destructive device made in violation of federal law |
| 26 USC 5861 (d) | receive or possess a destructive device not registered in the National Firearms Registration and Transfer Record |

The application is based on these facts:

### SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA SUE ELLEN CLARK, FBI

*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/19/17__

*Judge's signature*

MICHEAL J. NEWMAN U.S. MAGISTRATE JUDGE

*Printed name and title*

City and state:  DAYTON, OHIO

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR SEARCH WARRANT**

I, Sue Ellen Clark, being duly sworn, hereby depose
and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Special Agent of the Federal Bureau of
Investigation (FBI) and have been for over 18 years.  I am
currently assigned to the FBI's Cincinnati Field Office, Dayton
Resident Agency.  During my tenure with the FBI, I have
personally participated in numerous criminal and national
security investigations.  As such, I have gained both knowledge
and experience in gathering and collecting evidence related to
violations of Titles 18 and 26 of the United States Code and
other violations of federal law.  My experience includes
obtaining and/or participating in numerous search warrants and
arrest warrants with federal, state, and local law enforcement
agencies.

2.  This affidavit is submitted in support of an
application for a search warrant to search the following
location for evidence, fruits, and instrumentalities of the
following violations of federal law, namely Title 26 U.S.C. §
5861 (c) and (d), Receipt and Possession of Destructive Devices

(Explosive Materials) not registered in the National Firearms Registration and Transfer Record believed to be stored and/or secreted at a residence located at 2302 Schnebly Road, Spring Valley Twp., in Greene County, Ohio including any garages, vehicles, storage lockers, cabinets, sheds, closets or outbuildings at this location, more fully described in Attachment A, which is incorporated herein by reference.

3.    The articles that are the subject of the search warrant are detailed in Attachment B.

**PROBABLE CAUSE**

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, information provided by various law enforcement agents and witnesses, and other documents obtained during the course of this investigation.  This affidavit is intended to show that there is probable cause for the requested search warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter.

5.    **Joel Benjamin Montgomery** (hereinafter "MONTGOMERY") was born January 16, 1969.  He currently resides at 2302 Schnebly Road, Spring Valley Twp., Greene County, Ohio. The Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATF) the FBI, and other law enforcement agencies have been

investigating MONTGOMERY, a former United States Air Force
(USAF) Reserve Major and former subcontractor for Department of
Defense (DoD) Contractor Macaulay-Brown, Inc. (MBI), for
Unlawful Possession of a Machinegun, Possession of Unregistered
Firearms, and Theft of U.S. Government Property.

6.  From approximately June 2007 through August 2012,
**MONTGOMERY** worked as a Subcontractor for DoD Contractor MBI
through **MONTGOMERY'S** company, M&M Aviation.  During the period
of the contractual agreement, **MONTGOMERY** worked on various
projects with the Air Force Research Laboratory (AFRL), located
at Wright-Patterson Air Force Base (WPAFB) in Fairborn, Ohio,
which utilized the AN/AAR-47 Missile Warning System (MWS) for
testing and research purposes.  Given this circumstance, while a
sub-contractor of MBI, **MONTGOMERY** had access to various pieces
of United States military and civilian aviation technology and
intellectual and other proprietary property, including, but not
limited to:  the AN/AAR-47 Missile Warning System (MWS) and a
Control, Countermeasures Set Display Unit.   As detailed more
fully below, the AN/AAR-47 Missile Warning System (MWS) and a
Control, Countermeasures Set Display Unit were not permitted to
leave the confines of WPAFB.  **MONTGOMERY's** association with MBI
was terminated in or around August 2012 because he no longer

3 - AFFIDAVIT

maintained had the appropriate and required security clearances necessary to continue working on the sensitive projects connected to AFRL.

7.    On June 24, 2015, the Greene County Sheriff's Office (GCSO) executed a search warrant, issued by the Xenia, Ohio Municipal Court, at **MONTGOMERY'S** residence located at 2302 Schnebly Road, Spring Valley, OH 45370.  The purpose of the warrant was to obtain evidence supporting a 'criminal damaging' investigation.  Neighbors had complained that, while **MONTGOMERY** was shooting firearms at a back stop located on his property, certain bullets were coming up over the hill impacting into and damaging a building and vehicles.  **MONTGOMERY** denied the allegations, yet bullet holes, recovered bullets, witnesses and additional investigation suggested otherwise.  Some of the shooting, according to complainants and a GCSO Deputy, sounded like machinegun fire.

8.    During the ensuing search, investigators seized more than one hundred fifty firearms, including "homemade" rifles, approximately five "skids" of ammunition, several firearms kits, numerous firearm parts including barrels, a variety of receivers and a firearm building instruction manual for a "Maadi-Griffin" .50 caliber rifle.  The basement of

4 - AFFIDAVIT

**MONTGOMERY'S** home was found to contain a lathe (with filings observed upon it) and a drill press. The lathe and the drill press were not seized. On-scene investigators suspected that some of the firearms as well as firearm receivers seized pursuant to the warrant were in-fact machineguns.

9. In the weeks following the state search, the GCSO provided the Bureau of Alcohol, Tobacco, Firearms and Explosives (BATF) with various opportunities to inspect the seized items. One of the firearms seized was described as a Fabrica, model Imbel, caliber 7.62, serial number 113841. Additional information gleaned from an examination of this firearm indicated its manufacturer/place of origin consisted of: Fabrica De ItaJuta, Brasil PAC7201-E113841 – Pacific Armament Corp., Modesto, CA FZ SA 7.62. The receiver of this firearm contained a selector switch with three positions. Xenia Police Detective Lon Etchison, a person knowledgeable and experienced in firearms and a SWAT team member, stated that when the selector switch was placed in the safe position, the firearm would not function. When the selector switch was placed in the semi-auto position, the firearm field tested as a semi-automatic weapon. When the selector switch was placed in the automatic position, the firearm field tested as a fully automatic firearm.

5 - AFFIDAVIT

Additional similar receivers were found among the numerous seized firearms parts. Moreover, Detective Etchison advised he suspected that the firearm was comprised of foreign made parts.

10. Additionally, during the search of **MONTGOMERY'S** residence pursuant to the state search warrant, a suspected silencer, black in color, was also found in in plain view located in what appeared to be an office area of the living quarters. No typical manufacturer's markings, such as company name, model, caliber and serial number, were observed. Given the lack of markings, and based on SA Tilton's prior training and experience, this silencer appeared to be a homemade device. Additionally, a Walther pistol, model P22, .22 caliber, serial number L222790 with a threaded barrel was also seized pursuant to the state search warrant. Contained in the same gun box as said handgun was an YHM silencer, model 22mite, caliber .22, serial number M221502.

11. The information regarding the silencer with identifiable serial number was submitted to the National Firearms Act (NFA) Branch to determine to whom it may be registered. This search revealed that it, together with another identical silencer, (except for a different serial number), was registered to "Hush Me Now A Revocable Trust" of 2302 Schnebly

6 - AFFIDAVIT

Road, Spring Valley, OH.  The ATF Form 4, Application for Tax

Paid Transfer and Registration of Firearm, indicated **JOEL B.**

**MONTGOMERY, Trustee**, signed the certification for both silencers

on July 8, 2008. It should be noted that the GCSO seized only

one of these two listed silencers during the execution of said

state search warrant.

12.  The NFA Branch advised that there were no other

firearms registered to this trust entity or said address.  A

complete search for any ATF Form 1, Applications to Make and

Register a Firearm, related to said trust and/or said address

was conducted.  A trust can be authorized to manufacture certain

specific firearm related items by first paying a tax and

properly filing a required ATF Form 1.  The NFA Branch further

advised that no such filings/records were found indicating any

official authorizations were ever granted to either **MONTGOMERY**,

or any trust entity connected to him or his home address to

manufacture NFA firearms, silencers or machineguns.

13.  Additionally, a notebook containing instructions

about building Maadi-Griffin .50 caliber rifles was also seized

pursuant to said state search warrant.  Indeed, two similar .50

caliber rifles, with no typical manufacturer markings were also

seized by the GCSO.  There were several additional barrels found

in a box similar to the ones used in the construction of these two said firearms. At least one PMKMS/AKMS parts kit seized had a receiver that was at least partially completed. There were several other kits/parts seized that were identified as 1919A6, AK kits, AR upper and lower receivers, FNFAL receivers and parts, and more.

14. BATF SA Housum is aware there are firearms that may field test as being a fully automatic weapon, however may ultimately be later determined to not be considered a machinegun. Also, there are some firearms, although configured to shoot only in the semi-automatic mode, that are legally determined to qualify as machineguns because of the characteristics or configuration of the receiver. Under certain circumstances, so-called "lightening links", and/or other components can be used to readily convert a semi-automatic firearm into a fully automatic firearm thereby legally qualifying as machineguns. Moreover, 18 U.S.C. § 922(r) makes it illegal for anyone to assemble from imported parts any semiautomatic rifle or shotgun prohibited from importation.

15. On July 22, 2015, pursuant to a Federal Search Warrant, BATF SA Tilton collected and transported certain evidence previously seized by the GCSO to the National BATF

Firearms Technology Criminal Branch (FTB) Facility located in
Martinsburg, WV in order to permit Firearms Enforcement
Officer(s) (FEO) to complete an in-depth examination and
analysis to determine who the subject firearms' manufacturers
were; whether they were clandestinely made; whether they were
NFA seized firearms; and whether they indeed functioned as
originally designed. Several firearms also contained
corresponding kits/parts. FTB was tasked with determining
whether individually or collectively any of these said firearms,
after being readily assembled qualified as either a Gun Control
Act or NFA firearm.

16. Based upon a thorough examination, BATF FEO Ron
Davis confirmed that the unmarked suspected silencer was indeed
considered a silencer for NFA purposes.

17. FEO Davis further examined a seized belt fed
Rapid Fire, model 1919, caliber .308, serial number 1244, which
was also marked as a "semi-automatic" firearm. He advised that
the receiver of this weapon lacked the so-called "denial
islands" that are required for semi-automatic model 1919 firearm
receivers. Using a part, he found in and among the seized
evidence collected from **MONTGOMERY'S** residence, he was able to
demonstrate how the weapon's receiver would not accept the said

9 - AFFIDAVIT

part had the receiver been a semi-automatic receiver. As a result, FEO Davis opined that modifying other components to make this firearm fire in a semi-automatic mode, was not in and of itself, sufficient to disqualify this weapon as a machinegun.

18. Utilizing other parts that were seized from **MONTGOMERY'S** residence, FEO Davis was able to fire the said belt fed Rapid Fire, model 1919, caliber .308, serial number: 1244 as a fully automatic machinegun.

19. On October 26, 2015 a Federal Search Warrant was executed at **MONTGOMERY'S** Spring Valley residence related to various suspected firearms offenses. During the course of this search, various items of equipment purportedly belonging to the U. S. Air Force were observed by investigators in plain view. Upon observing said equipment, the on-scene federal agents suspended the search operations until a second Federal Search Warrant was secured thereby specifically allowing them to search for items suspected to have been stolen and/or converted from the U. S. Air Force.

20. After the second Federal Search Warrant was secured, agents proceeded to execute said warrant at **MONTGOMERY'S** residence. Among the items of evidence thereafter seized as suspected U. S. Government property were: (a) the

10 - AFFIDAVIT

AN/AAR-47 Missile Warning System (MWS), including an Optical
Sensor, Serial Number (SN) TJQ03548, believed to have an
estimated value of approximately $40,000; and (b) a Control,
Countermeasures Set Display Unit, SN TJQ02201, believed to have
an estimated value of approximately $10,000; and (c) a Canon
Powershot Digital Camera, SN 4422112876.

     21. As noted above, **MONTGOMERY** previously worked on
sensitive Missile Warning projects at AFRL. This work utilized
the AN/AAR-47 Missile Warning System (MWS) equipment for testing
purposes. The MWS is utilized by all branches of the U. S.
military on both fixed wing and rotary aircraft. The MWS is
only permitted to be used by the U. S. Government and/or its
designees. This equipment is only to be maintained at U. S.
Government facilities and reservations and/or on aircraft
utilized by the U. S. Government and/or its designees.

     22. On November 4, 2015, AFRL personnel examined the
MWS components seized from **MONTGOMERY'S** residence on October 26,
2015. They immediately identified both components as integral
parts of the MWS, a system that was previously utilized for
testing throughout the AFRL.

     23. On November 6, 2015, **MONTGOMERY** and his attorney,
Thomas Merritt, Esq. voluntarily appeared at the United States

11 - AFFIDAVIT

Attorney's Office in Dayton, OH to discuss the October 26, 2015 Federal Search Warrants executed at **MONTGOMERY'S** residence, as well as the pending federal criminal investigation. Assistant United States Attorney (AUSA) Brent Tabacchi, BATF SA John Tilton, and FBI SA CJ Freihofer attended this meeting. **MONTGOMERY** was confronted with the fact that U. S. Government Property was seized from his residence. **MONTGOMERY** advised that he was never told that he could or could not take any of the government property with him upon termination his employment by MBI. AUSA Tabacchi presented the seized Optical Sensor to **MONTGOMERY** at the meeting seeking an explanation or response. **MONTGOMERY** acknowledged that the Optical Sensor did belong to the U. S. Government and was utilized by him during his AFRL testing efforts. Also, **MONTGOMERY** further advised that he must have transported the Optical Sensor from his aircraft hangar located in Springfield, Ohio to his Spring Valley residence. He further reiterated that nobody ever told him he could or could not keep the Optical Sensor, and informed all present that the Optical Sensor was "old technology".

24. On or about November 10, 2015, the AFRL was requested by the FBI to examine their equipment inventory records in order to determine whether certain seized pieces of

12 - AFFIDAVIT

equipment were connected to AFRL.  Two specific units were checked for, to wit: an optical sensor, SN TJQ03548, and a Control, Countermeasures Set Display Unit, SN TJQ02201.  Both items were ultimately determined to be listed as property of the U. S. Government.  The AFRL was able to identify both components as having been on the inventory lists of the Aryzt Advanced Programs Branch.  During a physical inventory completed in June 2012, it was then determined that the optical sensor was missing.  While complying with said request, the AFRL also determined that the Control, Countermeasures Set Display Unit was also missing, and had been erroneously maintained on the inventory.  AFRL has concluded the serial numbers on both said components seized from **MONTGOMERY'S** residence did indeed originate from AFRL.

25.  Following **MONTGOMERY'S** termination with MBI, a physical inventory indicated items of Government Furnished Equipment (GFE) were missing, including, but not limited to, a Canon Powershot digital camera, SN 4422112876.  This camera was determined missing on about August 24, 2012.  It was last used to document a Hostile Fire Indication (HFI) test setup procedure on about August 2, 2012.

13 - AFFIDAVIT

26. On about August 2, 2012, **MONTGOMERY** coordinated an Official Test and Evaluation at his Spring Valley residence. According to AFRL/MBI personnel, this testing and analysis was related to the said HFI project. The Canon Powershot digital camera was allegedly used to document test setup for this HFI test.

27. On September 4, 2015, an MBI employee was contacted by the FBI. This individual stated he was employed as an MBI contractor at the AFRL. Two of the defense contracts that this individual worked on were the PETAD and Omni-Sentinel projects. Since about 2003, this individual had worked on contracts with AFRL. During this time period, he worked with **MONTGOMERY** on the PETAD and Omni-Sentinel projects, to include the MWS testing. At the end of August 2012, about two days before **MONTGOMERY** was terminated as a MBI subcontractor, this individual confronted **MONTGOMERY** as he was observed departing the AFRL Research & Development Hangar on WPAFB. **MONTGOMERY** was then observed carrying a high tech Forward-Looking Infrared (FLIR) camera estimated to be worth approximately $50,000. When asked by this individual what **MONTGOMERY** was doing with the FLIR camera, **MONTGOMERY** responded that he was going to utilize the FLIR camera on some type of research & development project.

14 - AFFIDAVIT

This individual advised **MONTGOMERY** the project to which **MONTGOMERY** referred was not a project he was directed to work on, and advised **MONTGOMERY** to return the FLIR camera to the hangar immediately. **MONTGOMERY** complied and placed the FLIR camera back in the hangar.

28. Throughout the subject investigation, various officials at WPAFB who have or had oversight and/or supervisory responsibilities of various units/laboratories at the AFRL while **MONTGOMERY** was employed as a subcontractor for MBI and assigned to work on projects at AFRL were interviewed. None of the individuals interviewed granted **MONTGOMERY** permission to keep any U. S. Government owned and/or Government Furnished Equipment (GFE) at the time of his termination.

29. Moreover, law enforcement officials connected with this investigation have learned that, since approximately 2014, **MONTGOMERY** has made or attempted to make various technical and/or research related presentations to various groups and at various locations throughout the U.S. concerning and related to MWS.

30. On October 10, 2017, BATF received information from an identified individual who is believed to be a long-time acquaintance of **MONTGOMERY.** The individual stated that as

15 - AFFIDAVIT

recently as October 5, 2017, MONTGOMERY made alarming comments that prompted the individual to notify BATF. The individual stated MONGTOMERY has made comments about "taking out" people. The individual went on to say that MONTGOMERY has revenge issues, and goes after everyone who has wronged him. MONTGOMERY told the individual he (MONTGOMERY) has to get out of town. He (MONTGOMERY) has a case coming up, there's a new prosecutor who is trying to make a name for himself, and he has got to get out of town or he's seriously going to kill a lot of people. MONTGOMERY is furious with everyone involved in the case. The individual stated MONTGOMERY has stated when he goes, he is going to take a lot of people with him. According to the individual, MONTGOMERY made alarming comments after the recent Las Vegas, Nevada mass shooting, which the individual described as MONTGOMERY shaming the shooter for not killing more people. The individual further advised MONTGOMERY may be setting explosive traps for law enforcement on his property. The individual stated he believes MONGTOMERY has a drinking problem and his life is out of control.

31. On or about October 12, 2017, the aforementioned identified individual provided BATF with certain text messages

16 - AFFIDAVIT

recently generated by MONTGOMERY. Relevant portions of said text messages include as follows:

"Building some more mortars for indirect fire at this point"

"One and a half mile range, should be good to rain the house with shrapnel with the feds"

"I'm taking my time. Letting the epoxy with the BB's cure. You got to make sure that the shrapnel is effective and spreads appropriately with a high explosives"

"You don't want to be like that dork and only kill 60 people and moon 500. You want to be able to kill at least half the people on the venue"

"That should have said wound"

"But he was only an accountant, I designed weapons for 20 years"

  32. During previous 2015 searches of MONTGOMERY's residence, law enforcement officials observed indicia of explosive materials including, but not limited to: blasting caps. Law enforcement officials also observed various types and categories of materials and equipment that could be used to construct destructive devices as more fully referenced and described below. Law enforcement officials also observed an

17 - AFFIDAVIT

electronic media word document entitled "*Anarchists Cookbook*".
Based upon both your Affiant's prior training, experience,
coupled with discussions with BATF agents familiar with this
investigation, this document serves as an instruction manual on
how to construct improvised and otherwise homemade explosive
devices.

     33.  Based upon reliable firsthand information
provided to investigators by a person intimately knowledgeable
of the interior confines of MONTGOMERY's residence, this
individual reportedly observed during the time period of between
the fall of 2013 and March 2014 observing wood and steel
ammunition containers stored in the basement of said residence.
Said containers contained items described as blocks of
green/gray clay with the label "C-4" printed on them in black
coloring.  Your Affiant is aware that C-4 is a well-known form
of plastic explosives.

     34.  Based upon the above referenced facts and
circumstances gathered by source information, previously
executed search warrants at MONTGOMERY's residence, witness
interviews and text messages and telephone calls generated by
MONTGOMERY, your Affiant believes there is probable cause to
believe certain destructive devices, explosive material and

18 - AFFIDAVIT

components which represent relevant evidence, fruits, and instrumentalities of the subject criminal investigation into suspected violations of federal law, namely Title 26 U.S.C. § 5861 (c) and (d), Receipt and Possession of Destructive Devices (Explosive Materials) not registered in the National Firearms Registration and Transfer Record will be found at MONTGOMERY's residence located at 2302 Schnebly Road, Spring Valley Twp., in Greene County, Ohio

## ITEMS TO BE SEARCHED

35. The items that are the objects of the search are explosive and Improvised Explosive Device (IED) related materials. These include, but are not limited to: (a) the explosives, (b) the container, (c) the fuzing system, (d) manufacturing tools and supplies, (e) instructional information, (f) purchase documentation and (g) evidence of prior testing.

36. The explosives. Bombs and IEDs require explosives to function. Explosives include both high explosives, such as TNT, dynamite, C-4 and commercial explosives (KineStik, ANFO, etc.) as well as low explosives such as black powder, Pyrodex, smokeless powder and flash powder. The main explosive charge can also be home made (improvised) from various chemicals to include fuels and oxidizers such as ammonium nitrate, fuel oil,

19 - AFFIDAVIT

nitro methane, phosphorous, peroxides, acids, sulfur, charcoal, perchlorate mixtures, potassium nitrate, acetone and powdered metals such as aluminum and magnesium. I have been informed that in addition to the main explosive charge a bomb or IED needs an initiator in order to function. The initiator can be a commercial blasting cap, electric match, squib, time fuse, cannon or hobby fuse or an improvised initiator. An example of an improvised initiator would be a light bulb with the glass broken to expose the filament.

    37. <u>The container</u>. I have been informed that IEDs constructed from low explosives such as black powder and smokeless powder usually require some type of container such as a PVC or metal pipe or cardboard tube. Other types of containers often utilized in the construction of IEDs are plastic containers and cardboard containers. The containers are used to both contain the explosive components and hide the IED from sight after it has been set in place. The container can also contain fragmentation or shrapnel intended to cause additional injury. Fragmentation and shrapnel can be made from nails, screws, nuts, bolts, BBs, lead shot and similar material.

    35. <u>The fuzing system</u>. The fuzing system is what initiates the device. The fuzing system can initiate the bomb

or IED based on time, something the intended victim does or on command of the bomber. I have been informed that fuzing systems include power supplies such as batteries and switches such as clothespin switches, lever/pressure switches, improvised loop switches and other electric or electronic switches. Additional components often found in IEDs include light emitting diodes (LEDs), relays, timers, wire, solder, radio controlled transmitters and receivers.

38. _Manufacturing tools and supplies_. I have been informed that individuals building bombs and IEDs possess tools and supplies used in the manufacture of these devices. These tools and supplies include, but are not limited to, drills, drill bits, pipe wrenches and other plumbers' tools, vise grips and other pliers, hack saws, grinders, metal files, wire cutters and strippers, welders, soldering irons, glue guns, tar, epoxy, contact cement, tape (electrical, duct, masking, sealing and strapping tape) and other fasteners. These tools and supplies are of evidentiary value as they indicate a bomber's "signature" and link the bomb builder with the device.

39. _Instructional information_. I have been informed that bomb builders often retain documents and instructions relating to the construction of the devices and directions on

21 - AFFIDAVIT

how to manufacture or mix explosive mixtures and compounds.
These documents and instructions are not limited to books,
military manuals, diagrams, magazines, journals, internet
printouts, articles, videotapes, CDs, DVDs and documents
retained on computer hard drives, discs or other computer media.

a. Searching computer systems is a highly
technical process which requires specific expertise and
specialized equipment.  There are so many types of computer
hardware and software in use today that it is impossible to
bring to the search site all of the necessary technical manuals
and specialized equipment necessary to conduct a thorough
search.  In addition, it may also be necessary to consult with
computer personnel who have specific expertise in the type of
computer, software application, or operating system that is
being searched.

b. Searching computer systems requires the use of
precise, scientific procedures which are designed to maintain
the integrity of the evidence and to recover "hidden," erased,
compressed, encrypted or password-protected data.  Computer
hardware and storage devices may contain "booby traps" that
destroy or alter data if certain procedures are not scrupulously
followed.  Since computer data is particularly vulnerable to

22 - AFFIDAVIT

inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

   c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing hundreds of gigabytes of data are now commonplace. Therefore, a substantial amount of time is necessary to extract and sort through data to determine whether it is evidence, contraband or instrumentalities of a crime. As such, the FBI requests the Court authorize seizure of videotapes, CDs, DVDs and computer hard drives, discs or other computer media in order for an appropriate forensic search to be conducted off-site.

   40. <u>Purchase documentation</u>. I have been informed that bomb builders often retain documentation of the purchase of the

various components of the explosives, bomb or IED. These
documents include, but are not limited to, cash register
receipts, credit card receipts, credit card statements,
invoices, bills and packing slips.

41. Evidence of prior testing. I have been informed
that bomb builders and bombers often retain evidence of their
testing of the devices and prior bombings and damage done with
the bombs and explosives. This evidence includes, but is not
limited to, photographs, videotapes, digital recordings, residue
from explosions and fragments from prior detonated devices.

42. Electronic media, computers, electronic data
storage devices, cell phones, answering machines, telephone
billing records, telephone toll records.

43. In the event that agents/officers encounter
safes, locked cabinets, and/or secured containers and/or devices
at the location(s) and in the vehicle(s) identified above, it is
requested that the Court direct the investigators to access the
safe(s), locked cabinet(s) or other secured containers and/or
devices to search for evidence as described above.

44. At approximately 7:22 PM on October 18, 2017,
federal agents arrested MONTGOMERY pursuant to an arrest warrant
(*See* Case No. 3:17mj481) which was previously issued by this

24 - AFFIDAVIT

Court pursuant to a criminal complaint sworn to by your Affiant. MONTGOMERY'S arrest was executed outside the Greene County Jail Facility located in Xenia, Ohio. Incident to said arrest, the following cellular phone was removed by law enforcement authorities from MONTGOMERY'S person, to wit: an LG G6 Smart Phone; Model LG-LS993; MEID: 089-451-725-600-402-720. Prior to MONTGOMERY'S arrest, law enforcement officials had become aware that this cell phone had been used to transmit and receive certain text and voice messages concerning the topic of MONTGOMERY'S intended and illicit planned use of explosives and firearms. Based upon federal law enforcement's October 19, 2017 execution of a search warrant (See Case No. 3:17mj490) at MONTGOMERY's Spring Valley, Ohio residence and curtilage, the presence and certain indicia of bomb making equipment, components, devices and equipment were observed, located and seized. As such, legal authorization is sought in this application to forensically search and examine any and all stored electronic data contained on said LG G6 Smart Phone, to include, but not limited to, all text messages, e-mail, voice mail, and photo/digital images.

45. Based on the foregoing, I request that the Court issue the proposed search warrant.

25 - AFFIDAVIT

_Sue Ellen Clark_
Sue Ellen Clark
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence this
19th day of October, 2017.

_Michael Newman_
Michael Newman
United States Magistrate Judge

26 - AFFIDAVIT